Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>RECURRIDO<br><br>v.<br><br>MENOR JERT<br><br>PETICIONARIO | TA2025CE00117 | *Certiorari*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala de<br>Menores de<br>Mayagüez<br><br>Caso Núm.<br>2025-05-050-01474<br><br>Sobre:<br><br>Art. 3.1, Ley 54 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 15 de agosto de 2025.

### I.

El 9 de julio de 2025, el menor JERT (menor JERT o peticionario) presentó digitalmente una petición de *Certiorari* en la que nos solicitó que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior para Asuntos de Menores de Mayagüez (TPI o foro primario), el 9 de junio de 2025, notificada y archivada en autos el 11 de junio de 2025.[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la solicitud de desestimación radicada por el peticionario.

Junto al recurso, el peticionario presentó una *Moción presentando físicamente regrabación* en la que nos informó que entregó físicamente en la Secretaria del Tribunal de Apelaciones los audios de las vistas celebradas los días 28 de abril de 2025 y 9 de junio de 2025 que sustentan su petición, dado a que el Sistema

---

[1] Véase Apéndice 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Caso del Tribunal de Apelaciones (SUMAC-TA).

Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA) no provee para cargar audios.

Al día siguiente, el peticionario presentó una *Moción informativa* para notificar la entrega física de las regrabaciones en la Secretaría del Tribunal de Apelaciones, debido a que su copia no fue ponchada como evidencia de entrega.

El 15 de julio de 2025, emitimos una *Resolución* en la que concedimos a la parte recurrida hasta el 30 de julio de 2025 para exponer su posición sobre los méritos del recurso.

El 18 de julio de 2025, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General (Procurador General o parte recurrida), presentó una *Moción informativa y solicitud de remedio* solicitando que se le conceda acceso al expediente digital en SUMAC-TA para examinar los documentos dado a que está marcado como confidencial.

El 21 de julio de 2025, el peticionario presentó una *Moción informativa* en la que indicó que remitió al Procurador General, mediante correo electrónico, el recurso presentado y sus anejos.

El 29 de julio de 2025, emitimos una *Resolución* en la que, en vista de que la Secretaria nos informó que le otorgó el acceso a la parte recurrida, le concedimos al Procurador General hasta el 8 de agosto de 2025 para exponer su posición.

El 8 de agosto de 2025, el Procurador General presentó un *Escrito en cumplimiento de orden* en el que suplicó que deneguemos la expedición del auto de *certiorari*, o, confirmemos la determinación recurrida.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de *certiorari*.

## II.

El caso de marras tuvo su génesis en una *Queja-Querella* que el Pueblo de Puerto Rico presentó en contra del menor JERT por hechos ocurridos el 5 de febrero de 2025.[2] En esta, se le imputó una falta por el Art. 3.1 de la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 601 *et seq.* (Ley 54) por, alegadamente, de manera ilegal, voluntaria y maliciosa, emplear fuerza física y violencia psicológica contra la menor TAHC, con quien tuvo una relación consensual. El TPI determinó causa probable en la vista de aprehensión celebrada el 6 de febrero de 2025 y el menor quedó bajo la custodia de sus encargados.

Según se desprende del expediente digital, previo a la *Vista de Causa Probable para Radicar Querella*, el peticionario presentó una *Moción Urgente en Solicitud de Orden* en la que le solicitó al foro primario que emitiera una orden para obtener información relacionada a los hechos del caso en la escuela donde alegadamente ocurrieron.[3] El 25 de marzo de 2025, el TPI concedió la solicitud y emitió una *Orden* para que los funcionarios escolares de la Escuela Superior Vocacional Dr. Perea Fajardo de Mayagüez con conocimiento de los hechos ocurridos revelaran la información a la representación legal del peticionario.[4]

Posteriormente, el 28 de abril de 2025, el peticionario presentó una *Moción Urgente en Solicitud de Desestimación al amparo del Art.4-A de la Ley de Menores de Puerto Rico*.[5] En esta, expuso que, según la información obtenida en el plantel escolar donde alegadamente ocurrieron los hechos, no hubo el agotamiento de remedios administrativos que dispone el Art.4-A de la *Ley de*

---

[2] Véase Apéndice 1 del expediente digital del caso en SUMAC-TA.
[3] Véase Anejo I del Apéndice del recurso de *certiorari* en SUMAC-TA.
[4] Íd., Anejo IV. Notificada y archivada en autos el 27 de abril de 2025.
[5] Íd., Anejo VII.

*Menores de Puerto Rico*, Ley Núm. 88 de 9 de julio de 1986, según enmendada, 34 LPRA sec. 2201 *et seq.* (Ley de Menores), y la Sección 12.4 del Reglamento General de Estudiantes y Asistencia Obligatoria Departamento de Educación, Reglamento Núm. 9243 de 17 de diciembre de 2020. Así las cosas, sostuvo que se le violentó el debido proceso de ley por lo que solicitó la desestimación de la *Queja-Querella* en virtud de la Regla 6.2 de las Reglas de Procedimiento para Asuntos de Menores, 34 LPRA Ap. I, R. 6.2, por falta de jurisdicción del TPI.

El 28 de abril de 2025, el TPI emitió una *Resolución* en la que dispuso sobre la *Moción urgente en solicitud de desestimación al amparo del Art. 4-A de la Ley de Menores de Puerto Rico* radicada por el peticionario que la atendería en corte abierta.[6] Ese mismo día, el TPI celebró una vista argumentativa en la que atendió el planteamiento del Ministerio Público sobre que la solicitud de desestimación radicada por el peticionario se había presentado de manera tardía. Escuchados los argumentos de las partes, el foro primario declaró No Ha Lugar a dicho planteamiento. Este aludió al tracto procesal del caso para sustentar su determinación. En consecuencia, otorgó un término al Ministerio Público para que expresara su posición por escrito con relación a la solicitud de desestimación y señaló una vista argumentativa para atender, en sus méritos, los planteamientos de ambas partes. Incluso, en la misma fecha, el TPI emitió una *Resolución* en la que expuso que sostenía su determinación de No Ha Lugar con relación al planteamiento expuesto por el Ministerio Publico de que la solicitud de desestimación se presentó de manera tardía.[7]

Por su parte, la parte recurrida presentó, con fecha de firmada del 8 de mayo de 2025, una *Réplica a Moción de Desestimación al*

---

[6] Íd., Anejo IX. Notificada y archivada en autos el 30 de abril de 2025.
[7] Íd., Anejo XI. Notificada y archivada en autos el 30 de abril de 2025.

*amparo de la Regla 6.2 de las Reglas de Procedimiento para Asuntos de Menores.*[8] Adujo que el Artículo 4-A de la Ley de Menores, *supra,* lo que procura es añadir alternativas para la solución de conflictos en las escuelas antes de que sea necesaria la intervención judicial y que su propósito principal es que la escuela se involucre en el proceso de búsqueda de soluciones de conflictos productos del ambiente escolar. Asimismo, alegó que la desestimación que pretende el peticionario riñe con la política pública del Estado en prevenir incidentes violentos entre parejas y en atajar dichas conductas mediante el proceso criminal de los casos bajo la Ley de Menores, *supra.* Además, planteó que la Ley 54, *supra,* le impone al Departamento de Justicia la obligación de investigar y procesar de manera expedita a todo imputado de cualquier violación a los artículos de dicha ley. Por ello, sostuvo que el remedio que provee el Departamento de Educación para el caso de marras no es un remedio adecuado.

El 9 de junio de 2025, el TPI celebró una vista argumentativa en la que las partes expusieron sus posturas con relación a la solicitud de desestimación radicada por el peticionario.[9] En resumen, las partes argumentaron lo siguiente:

1. La defensa del menor JERT argumentó que luego de entrevistar a su representado aconteció que los hechos ocurrieron en una escuela y en el proceso de entrevista con la trabajadora social de la escuela advino en conocimiento de que hubo una intervención preliminar con el menor JERT en la escuela; que éste fue suspendido de clases; y que posteriormente fue citado al TPI para la radicación de la falta.[10] Su postura con relación a la solicitud de desestimación fue que, aunque se hizo un plan preliminar en la escuela, no se llevó a cabo el procedimiento establecido para los casos de quejas formales que establece el Reglamento Núm. 9423, *supra,* entre otras cosas, el referido del asunto a la División Legal del Departamento de Educación y la celebración de una

---

[8] Íd., Anejo XIV.
[9] Regrabación de la vista del 9 de junio de 2025 presentada físicamente en la Secretaria del Tribunal de Apelaciones para ser anejado al expediente del recurso de *certiorari.*
[10] Íd., minuto 7:42-8:30.

vista ante un Oficial Examinador.[11] Además, planteo que sobre este caso se debe ver de manera primaria la Ley de Menores, *supra*, sobre la Ley Núm. 54, *supra*.[12]

2. Por otro lado, el Ministerio Público argumentó que la OA-2019-04 del Departamento de Justicia establece la manera en que se tienen que trabajar los casos de violencia doméstica y que es un requisito el que se tiene que investigar los casos, una vez realizada la consulta, dentro del término de veinticuatro (24) horas.[13] Argumentó que el Reglamento Núm. 9243, *supra*, lo que tiene es un propósito administrativo para imponer disciplina.[14] Para el Ministerio Público en este caso no se siguió el proceso establecido en virtud del Art. 4-A de la Ley de Menores, *supra*, pero que, aun así, en interés y por la política pública del Estado en asuntos de violencia doméstica, se trata de una jurisdicción concurrente entre el tribunal y la agencia administrativa y que es el TPI quien debe mantener la jurisdicción.[15]

Ese mismo día, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la solicitud de desestimación presentada por el menor JERT.[16] El TPI coincidió con los argumentos esbozados por el Ministerio Público sobre que el remedio que provee la agencia para este caso no sería uno adecuado en ley, aun cuando reconoció que no se siguió el proceso administrativo contemplado en el aludido reglamento. Expuso sobre que la política pública del Estado se impone sobre cualquier remedio administrativo que vaya en su contra y señaló las excepciones contempladas en el ordenamiento jurídico para prescindir del trámite administrativo. Por ello, resolvió que mantenía la jurisdicción para atender el asunto.

Inconforme con la determinación del TPI, el 9 de julio de 2025 peticionario radicó el presente recurso de *certiorari* en el que hizo el siguiente señalamiento de error:

**ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR LA QUEJA QUERELLA PRESENTADA CONTRA EL MENOR JERT A PESAR QUE NO SE AGOTARON LOS REMEDIOS ADMINISTRATIVOS DISPUESTOS EN EL REGLAMENTO ESCOLAR 9243 EN**

---

[11] Íd., minuto 9:40-11:25.
[12] Íd., minuto 37:10-37:45.
[13] Íd., minuto 24:10-25:35
[14] Íd., minuto 25:45-25:50.
[15] Íd., minuto 33:00-33:55.
[16] Véase Apéndice II del recurso de *certiorari* en SUMAC-TA. Notificada y archivada en autos el 11 de junio de 2025.

**COMPLETA VIOLACIÓN AL ARTICULO 4-A DE LA LEY DE MENORES Y LOS DERECHOS QUE COBIJAN AL MENOR.**

Alegó que el TPI no tiene jurisdicción para atender el caso de marras porque el Estado, al referirlo directamente al tribunal, obvió la enmienda a la Ley de Menores, *supra*, que establece el requisito de agotamiento de remedios administrativos. Adujo que el Reglamento Núm. 9243, *supra*, es claro al establecer que cuando se le imputa a un menor una violación a una ley estatal o federal constitutiva de Clase II o III se debe celebrar una vista evidenciaría luego de que el Director Escolar haya radicado un informe en la División Legal del Departamento de Educación y, que luego de celebrada la vista ante un Oficial Examinador y aplicada la sanción correspondiente, el menor puede apelar la decisión de la agencia ante el Tribunal de Apelaciones. Asimismo, arguyó que la Orden Administrativa Núm. 2019-04 del Departamento de Justicia como una directriz de una agencia gubernamental no tiene prelación sobre la Ley de Menores, *supra*, que es una normativa legislativa y que en este caso en particular se tenía que cumplir con el Reglamento Núm. 9243, *supra*. Agregó que, una vez culminado dicho procedimiento administrativo, la agencia, si lo entiende prudente, puede referir el caso al TPI. Además, expuso que dicho reglamento no diferencia entre las categorías de faltas para aplicar sus directrices.

Por su parte, el 8 de agosto de 2025, la parte recurrida presentó un *Escrito en cumplimiento de orden*. Adujo que la intención para el Artículo 4-A de la Ley de Menores, *supra*, sec. 2204a, es añadir mecanismos alternos para la solución de conflictos en las escuelas, promoviendo la participación de éstas en la búsqueda de soluciones antes de recurrir al tribunal. Sostuvo que el propio artículo contempla la posibilidad de que el tribunal pueda ejercer jurisdicción sobre el menor y que además establece el derecho de las víctimas de delito a presentar una querella ante la policía, activando

el procedimiento judicial. Asimismo, arguyó que el Departamento de Educación no cuenta con los recursos ni remedios adecuados para atender debidamente la situación ocurrida en este caso ni para ofrecer protección y apoyo a las víctimas de violencia. Por último, alegó que los hechos ocurrieron en los predios de la escuela, pero no son producto de una actividad o el ambiente escolar, lo que no es el peritaje del Departamento de Educación, y que, por ello, la agencia no está en posición de proveer un remedio adecuado.

En adelante, pormenorizaremos el derecho aplicable al presente recurso.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones*, según enmendada, In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 59-60, 215 DPR __

(2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[17]

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". ***Rodríguez v. Pérez***, 161 DPR 637, 651 (2004); ***Banco Metropolitano v. Berríos***, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". ***Citibank et al. v. ACBI et al.***, 200 DPR 724, 735 (2018); ***García López y otro v. E.L.A.***, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". ***Citibank et al. v. ACBI et al.***, supra; ***Medina Nazario v. McNeil Healthcare LLC***, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". ***Hietel v. PRTC***, 182 DPR 451, 459 (2011); ***Pueblo v. Rivera Santiago***, 176 DPR 559, 580 (2009); ***Negrón v. Srio. de Justicia***, 154 DPR 79, 91 (2001); ***Bco. Popular de P.R. v. Mun. de Aguadilla***, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

---

[17] Esta Regla dispone lo siguiente:
> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.,* supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, supra, pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B.**

La jurisdicción es la autoridad que tiene el tribunal para poder resolver casos y controversias. *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019). En Puerto Rico los tribunales ostentan la jurisdicción general, lo que significa que tienen "autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia". *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014). Sin embargo, el Estado es quien puede otorgar o privar a un tribunal de jurisdicción sobre la materia mediante legislación a esos efectos. *Rodríguez Rivera v. De León Otaño*, supra, pág. 708-709. La ausencia de falta de jurisdicción conlleva los siguientes efectos en los dictámenes emitidos: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro

de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. ***González v. Mayagüez Resort & Casino,*** 176 DPR 848, 855 (2009).

Por otro lado, la doctrina de jurisdicción primaria es una de autolimitación judicial para determinar cuál foro es el apropiado para atender la controversia. ***Colón Rivera et al. v. ELA***, 189 DPR 1033, 1057 (2013). La jurisdicción primaria tiene dos vertientes que son: la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, 204 DPR 89, 103 (2020). La primera vertiente es cuando la ley permite que la agencia administrativa o el tribunal tengan jurisdicción. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 103. En la jurisdicción primaria concurrente, tanto el foro judicial como el administrativo tienen jurisdicción, pero la primacía se cede a la agencia por esta tener el conocimiento especializado. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 103. En cambio, cuando se trata de la jurisdicción primaria exclusiva la ley distingue que la agencia será el único foro autorizado para resolver tal controversia. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 103. Cabe destacar que, la designación de jurisdicción exclusiva debe ser clara y especifica. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 104. Para poder determinar si la jurisdicción es exclusiva corresponde hacer un análisis sobre si la delegación es expresa o es implícita. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 104. Además, si la jurisdicción es exclusiva permite la revisión judicial hasta que la agencia emita su determinación final. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 104.

**C.**

Por otro lado, como norma de autolimitación judicial, se ha adoptado la doctrina de agotamiento de remedios administrativos, la cual determina "la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo." *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008) (citando a *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey*, 155 DPR 906, 916-917 (2001)); *Mun. de Caguas v. AT & T*, 154 DPR 401, 407 (2001). Mediante esta, los tribunales se abstienen de revisar una actuación de una agencia hasta tanto la persona afectada agote todos los remedios administrativos que tiene disponible, de manera que la decisión administrativa refleje la posición final de la entidad estatal. *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004). De ordinario, esta norma aplica a los casos en los que una parte que instó o tiene instada una acción ante una agencia gubernamental o algún ente administrativo recurre al tribunal sin antes haber culminado todo el trámite que tenía disponible en ese foro. *Municipio de Caguas v. AT & T*, supra, pág. 408. O sea, se invoca para cuestionar una acción judicial promovida por un litigante que originalmente participó en un procedimiento administrativo y luego recurrió al foro judicial teniendo todavía remedios administrativos disponibles. Íd. Lógicamente, la aplicación de esta doctrina requiere, por un lado, la preexistencia de un procedimiento administrativo que comenzó, pero no finalizó porque la parte acudió al foro judicial; mientras que, por el otro, es necesario que aún exista alguna fase del procedimiento que la parte debe agotar. Íd., pág. 409.

En cuanto a su razón de ser, la doctrina de agotamiento de remedios administrativos pretende evitar que se presente un recurso ante los tribunales sin que la agencia administrativa haya tomado una determinación final en el asunto. *Hernández, Romero v. Pol.*

*de P.R.*, 177 DPR 121, 136 (2009). De esta forma, también se fomenta que los organismos utilicen y apliquen su conocimiento especializado al dirimir las controversias. ***S.L.G. Flores-Jiménez v. Colberg***, supra, pág. 852.

Estatutariamente, la doctrina de agotamiento de remedios está codificada en la Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA sec. 9672 (LPAU). En ella, se establece que la parte adversamente afectada por una determinación administrativa, una vez haya agotado todos los remedios provistos por la agencia o el organismo administrativo apelativo correspondiente, podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones. Asimismo, prescribe que la revisión judicial será el recurso exclusivo para revisar en los méritos una decisión administrativa, sea de naturaleza adjudicativa o informal.

Ahora bien, la exigencia de agotar todos los remedios no es un principio de aplicación inflexible. ***S.L.G. Flores-Jiménez v. Colberg***, supra, pág. 853; ***Asoc. Pesc. Pta. Figueras v. Pto. del Rey***, supra, pág. 917. En virtud de ello, la Sección 4.3 de la LPAU, dispone que se podrá eximir a una parte de agotar remedios ante la agencia cuando: (1) el remedio sea inadecuado; (2) el requerir su agotamiento resulta en un daño irreparable al promovente; (3) en un balance de intereses, no se justifica agotar los remedios; (4) cuando se alegue una violación sustancial de los derechos constitucionales; (5) sea inútil agotar los remedios por la dilación excesiva en el procedimiento; (6) cuando la agencia administrativa carezca de jurisdicción; o (7) el asunto es estrictamente de derecho y resulta innecesaria la pericia administrativa. ***S.L.G. Flores-Jiménez v. Colberg***, supra, pág. 852.

### D.

La Ley de Menores es el estatuto reglamentador de los "procedimientos investigativos, judiciales y ejecutivos en los casos de menores que incurren en conducta constitutiva de delito, según tipificada en el Código Penal o en las leyes especiales". ***Pueblo en interés menores C.L.R. y A.V.L.***, 178 DPR 315, 323 (2010). Por ser una ley especial, la aplicación de la Ley de Menores es preferente a otras, y, en caso de conflicto, prevalecerán sus disposiciones especiales. Íd. Esta refleja un enfoque penal ecléctico que busca armonizar el rol de *parens patriae* del Estado de velar por la rehabilitación del menor ofensor y, de forma simultánea, exigirle responsabilidad al menor por sus actuaciones. ***Pueblo v. Suárez***, 167 DPR 850, 856-857 (2006).

En lo pertinente, el Art. 4 de la Ley de Menores, *supra*, sec. 2204, regula lo concerniente a la jurisdicción del Tribunal de Menores. Como norma general, el tribunal tendrá autoridad para conocer todo caso en que se impute conducta que constituya falta a un menor de trece (13) años o más, incurrida antes de cumplir dieciocho (18) años, sujeto al periodo prescriptivo dispuesto en las leyes penales para la conducta imputada. Íd. En cambio, no tendrá jurisdicción cuando los actos imputados al menor ocurren después de este haber cumplido dieciocho años, si se le imputa asesinato en primer grado mediante deliberación y premeditación o si se le imputa un delito que surja de esa misma transacción o evento y el menor hubiese cumplido quince años. Íd.

La Ley Núm. 47-2022, añadió el Artículo 4-A a la Ley de Menores, *supra*, sec. 2204a, el cual dispone lo siguiente:

> Antes del Tribunal ejercer su jurisdicción sobre la persona menor de edad, deberá agotarse todo remedio administrativo establecido en el sistema de educación pública o privada, según sea el caso, cuando la falta que se impute haya tenido lugar en un plantel escolar, ya sea en las inmediaciones de la escuela, en la transportación escolar o en actividades

escolares, deportivas con fin recreativo, cultural o académico.

Con esto la Asamblea Legislativa pretendió "proveer alternativas adicionales para la solución de conflictos ocurridos dentro del plantel escolar, sin la necesidad de que, de entrada, se exponga al menor a enfrentar un proceso judicial que pudiera privarle de su libertad. Exposición de Motivos, pág. 12.

En armonía, el Reglamento Núm. 9243, *supra*, pág. 6, "busca servir como base y estándar para atender lo concerniente a la convivencia en la comunidad escolar y los mecanismo[s] y [las] estrategias a utilizarse para atender situaciones disciplinarias nocivas". Específicamente, en el Artículo XI se detalla todo lo concerniente a la disciplina escolar incluyendo el proceso disciplinario, la seguridad escolar, el orden institucional el control de acceso a los planteles, mediación, y los registros y allanamientos. Reglamento Núm. 9243, *supra*, págs. 24-30. Por su parte, el Artículo XII dispone los procesos para la imposición de medidas correctivas, los cuales no limitan el derecho de la víctima a presentar una querella ante la policía de Puerto Rico para la correspondiente investigación y procedimiento judicial, a tenor con la Ley de Menores, *supra*. Reglamento Núm. 9243, *supra*, págs. 32-36.

La sección 12.2 (A)(1) de dicho reglamento, *supra*, pág. 32, define una falta como "cualquier acción que represente un incumplimiento con las disposiciones de este reglamento lo cual podrá dar inici[o] a la presentación de una queja". A su vez, las quejas están divididas en formales e informales. Respecto a las informales, estas aplicarán en aquellos casos que no constituyan Falta Clase II o Clase III bajo la Ley de Menores, *supra*. Reglamento Núm. 9243, *supra*, pág. 33. Al contraste, una queja formal será sobre "aquella falta al reglamento en la que se incurre en una violación a las leyes estatales y federales vigentes y que no caigan

bajo la definición de quejas informales". Estas serán dirimidas mediante una vista evidenciaria, presidida por un Oficial Examinador designado y cuyo proceso se llevará a cabo en la División Legal del Departamento de Educación. Reglamento Núm. 9243, *supra*, págs. 36.

**IV.**

En el caso de marras, el peticionario alegó que erró el TPI al no desestimar la *Queja-Querella* por falta de jurisdicción dado a que no se agotaron los remedios administrativos dispuestos en el Reglamento Núm. 9243, *supra*, y en violación al Art. 4-A de la Ley de Menores, *supra*, sec. 2204a.

El foro primario, aunque concluyó que no se agotaron los remedios administrativos que contempla la Ley de Menores, *supra*, y el Reglamento Núm. 9243, *supra*, resolvió que el remedio que provee la agencia para este caso no es uno adecuado y, por ello, determinó que mantenía su jurisdicción.

Por su parte, el Procurador General se opuso a la expedición del auto y arguyó que el texto del Artículo 4-A de la Ley de Menores, *supra*, no limita la jurisdicción del tribunal para atender situaciones que surjan en el contexto escolar. Adujo que en este caso el TPI tiene jurisdicción porque el asunto es uno de estricto derecho y el Departamento de Educación carece de peritaje en asuntos de violencia doméstica. Por eso, alegó que como la agencia no puede proveerle al menor ni a la víctima un remedio adecuado resulta innecesario agotar los remedios administrativos que contempla la Ley de Menores, *supra*.

Conforme a lo esbozado precedentemente, la Ley Núm. 47-2022, *supra*, añadió el Artículo 4-A a la Ley de Menores, *supra*, sec. 2204a, para que, cuando la falta imputada a un menor ocurra en el plantel escolar, se agoten todos los remedios administrativos establecidos por el sistema de educación pública o privada previo a

acudir a los foros judiciales. Sin embargo, es norma firmemente conocida que la exigencia de agotar todos los remedios no es un principio de aplicación inflexible ni automático. ***S.L.G. Flores-Jiménez v. Colberg***, supra, pág. 853; ***Asoc. Pesc. Pta. Figueras v. Pto. del Rey***, supra, pág. 917.

Tras un análisis objetivo, sereno y cuidadoso del expediente del recurso, resolvemos que debemos abstenernos de ejercer nuestra función revisora, en conformidad con los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. No surge de los autos que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción. La determinación del TPI es esencialmente correcta pues el remedio que provee la agencia no sería uno adecuado.

Con relación a los hechos imputados en este caso, la exigencia de agotar los remedios administrativos que provee el Departamento de Educación atenta contra la política pública del Estado en la prevención e intervención temprana en los casos de violencia doméstica. Por la naturaleza de los hechos, entendemos que el foro adecuado para adjudicar el caso es el TPI pues es innecesaria la pericia administrativa del Departamento de Educación. Además, desestimar la acción implicaría que el foro judicial no tiene jurisdicción para emitir órdenes relacionadas a que se promueva el trámite administrativo que inicialmente no se prosiguió por el Director escolar. Además, adviértase que el menor fue suspendido varios días de la escuela. Por lo cual, resolvemos que el TPI no incurrió en error al denegar la solicitud de desestimación.

### V.

Por los fundamentos pormenorizados, se deniega la expedición del auto de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones